UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------X

WILLIAM HINE and LINDA WEISGERBER,

                        Plaintiffs,

     -against-

COUNTY OF NASSAU, MICHAEL J. SPOSATO,
Individually and as Sheriff of Nassau
County, ARMOR CORRECTIONAL HEALTH
SERVICES, INC., ARMOR CORRECTIONAL
HEALTH SERVICES OF NEW YORK, INC.,
NASSAU COUNTY CORRECTIONS OFFICERS
"JOHN DOES 1-10", in their Individual and
Official Capacities, ARMOR CORRECTIONAL
HEALTH SERVICES EMPLOYEES AND AGENTS
"JOHN AND JANE DOES 11-20", in their
Individual and Official Capacities,

                        Defendants.

----------------------------------------------X

Case No.:

**<u>VERIFIED COMPLAINT</u>**

**JURY TRIAL DEMANDED**

     Plaintiffs, by their attorneys, Law Offices of Harry C.
Demiris, Jr., P.C., complaining of the defendants herein, allege
as follows:

<b><u>PRELIMINARY STATEMENT</u></b>

1. This is an action that arises out of the neglect,
mistreatment and preventable injuries to William Hine,
(hereinafter, "Plaintiff" or "Hine"), a 58 year old man while he
was an inmate in the care and custody of Nassau County (the
"County"), the Nassau County Sheriff's Department ("Sheriff's

Department") and the staff of the Nassau County Correctional Center ("Correctional Center") and in the health and medical care of the staff of Armor Correctional Health Services, Inc. and Armor Correctional Health Services of New York, Inc. (collectively "Armor") throughout Hine's detention at the Correctional Center.

2. At all relevant times herein, it was the duty and obligation of the defendants to care for, protect, and ensure the welfare of inmates of the Correctional Center, to administer and tend to the health care needs of inmates, and to provide necessary medical care to those inmates throughout their incarceration at the Correctional Center.

3. Upon information and belief, Armor had entered into a contract with the County to provide health services and medical treatment for the inmates of the Correctional Center, which contract was, at all times relevant hereto, and remains, in full force and effect.

4. Throughout his incarceration, William Hine was denied competent, necessary, medically obvious and timely care and treatment by the defendants or by adequately trained personnel acting on their behalf.

5. Despite being aware of Hine's medical, prescription medicine, and nutritional needs, the defendants and their employees refused to meet even the basic levels of those needs

and refused to provide Hine with any level of appropriate care throughout his incarceration from January 28, 2015 through July 3, 2015.

6.   Plaintiffs seek redress against the defendants for their intentional, unconstitutional, reckless and otherwise tortious conduct and for the deliberate indifference exhibited by these defendants, including, without limitation, with regard to policies, customs, practices, protocols, training of personnel, supervision of personnel, due process and the inhumane treatment of individuals that deprived Hine of necessary medical attention and his Constitutional entitlements of adequate healthcare and treatment that was not cruel or unusual or considered unacceptable due to the suffering, pain and humiliation inflicted upon Hine by the defendants.

7.   The defendants had and have known about the deficient, incompetent, unprofessional and negligent health care and medical treatment of inmates at the Correctional Center for years and have failed to make reasonable or effective efforts to remedy this situation.

8.   There has been a long and pervasive history of deficient health and medical care at the Correctional Center so as to establish a pattern of deficient health and medical care and official policies and procedures in effect to deprive inmates of necessary care.

9. The said long standing pattern of deficient health and medical care demonstrates actual knowledge of the County and all other defendants.

10. The said pattern of deficient health and medical care established, constituted and became policies, practices and customs of the defendants.

11. Allowing such policies, practices and customs to come into existence, to continue and to persevere constituted deliberate indifference on the part of the defendants.

12. Each and every action taken, or intentionally not taken, was in adherence and pursuant to the policies, practices and customs of the defendants in providing the absolute minimum level of care that they could provide with the only goal being cost savings to the County and profit for Armor.

13. The significant pattern of similar violations of inmates' rights to health and medical care at the Correctional Center signified a lack of proper training and supervision.

14. The County and Sheriff (hereinafter, collectively referred to as the "Municipal Defendants") failed and refused to properly train or adequately supervise Correctional Center staff, including Corrections Officers and medical staff, amounting to deliberate indifference to the Constitutional rights of Correctional Center inmates, including Hine.

15. There was an obvious need for such training to avoid the violation of the Constitutional rights of Hine (and other inmates) and the defendants failed and refused to address this situation.

16. There was a pattern of similar Constitutional violations by untrained or improperly trained employees and agents of the Municipal Defendants.

17. There was a direct causal link between the aforesaid inadequate training and the deprivation of Hine's Constitutional rights, resulting in his neglect, maltreatment and injuries.

18. The Municipal Defendants failed to establish a policy or practice that would protect Hine (and other Correctional Center inmates) against deficient health and medical care.

19. Armor failed and refused to properly train or adequately supervise Armor staff, or Correctional Center medical staff and corrections officers, focusing only on financial profitability, amounting to deliberate indifference to the Constitutional rights of Correctional Center inmates, including Hine.

20. There was an obvious need for such training to avoid the violation of the Constitutional rights of Hine (and other inmates') and Armor failed to correct the situation regarding this need for training.

21. There was a pattern of similar Constitutional violations by untrained or improperly trained employees and agents of Armor at

the Correctional Center and at other correctional facilities for which Armor provided health and medical services, in New York State and elsewhere.

22. Armor failed to establish a policy, custom or practice that would protect Hine (and other Correctional Center inmates) against deficient health and medical care.

23. In fact, Armor and the County established policies, customs and practices designed to deprive and delay the rendering of necessary and appropriate medical treatment and care in an effort to minimize the cost of providing medical treatment to inmates, including Hine, at the Correctional Center.

24. There was a direct causal link between the aforesaid acts and omissions and the deprivation of Hine's Constitutional rights.

25. There was an obvious need for supervision of Correctional Center staff, including corrections officers and medical staff, to avoid violations of the Constitutional rights of Hine and other inmates, yet the Municipal Defendants and Armor failed and refused to adequately supervise the aforesaid staff.

26. Various supervisors employed by the County, including Sheriff Sposato, directly participated in the Constitutional violations alleged herein, and implemented, approved, ratified and facilitated said violations through their personal conduct and involvement in the acts complained of herein.

27. Various supervisors employed by the County, including Sheriff Sposato, promulgated, created, implemented and/or were responsible for or acquiesced in the continued operation of policies, practices or customs that violated the Constitution of the United States.

28. In an effort to support the County's decision to continue using the services of Armor at the Correctional Center following reports against Armor issued by the New York State Commission of Corrections criticizing the care provided by Armor, Defendant Sposato has, both orally and in writing, defended the performance of defendant Armor on numerous occasions and praised the quality of services Armor provided for the County.

29. Defendant Sposato continued to defend Armor's performance despite numerous preventable inmate deaths and findings of inadequate health care at the Correctional Center.

30. Upon information and belief, Sheriff Sposato has a personal interest in Armor being the contracted health care vendor at the Correctional Center and continuing to provide services thereat.

31. The Municipal Defendants had and has the ability and authority to terminate, or facilitate the termination of, Armor's services at the Correctional Center.

32. Despite being well aware of Armor's history of repeated failures, improper acts, omissions, policies of deprivation of

care, policies and procedures with the only focus on maximizing net profit and cost savings for the County, the County and Sheriff Sposato continued to utilize, sanction and approve of Armor being the provider of medical services at the Correctional Center.

33. In his capacity as the Sheriff, Sposato had a duty to supervise the care of the inmates at the Correctional Center.

34. Rather than ensuring the Correctional Center inmates, including Hine, were adequately cared for, Sposato chose to act in a manner that was inconsistent with his duties and obligations for reasons that can in no way justify his actions and inactions.

35. Upon information and belief, Sposato was acting on behalf of the County and acting for his own personal benefit when he chose to ignore Armor's failings and to support contract renewals with Armor, when he chose to support the continued use of Armor at the Correctional Center, and when he chose to defend the quality of care provided by Armor despite the New York State Commission of Corrections.

36. Various supervisors of Armor and Armor employees directly participated in the Constitutional violations alleged herein.

37. Various supervisors of Armor promulgated, created, implemented and/or were responsible for or acquiesced in the

continued operation of policies, practices or customs that violated the Constitution of the United States.

38. The policies, customs and/or practices of the defendants were the moving force behind, or cause of, the violations of Hine's Constitutional rights.

39. In contravention of their duty and obligation to provide adequate, appropriate, and proper health and medical care services for inmates at the Correctional Center, and in violation of the Constitutional rights of those inmates, Armor, and the Municipal Defendants ignored the specific findings and recommendations, relating to specific deficiencies and failures at the Correctional Center, at various points in time, of the New York State Commission of Correction, a lawful and duly constituted agency of the State of New York tasked with the duty to investigate and oversee the care provided by correctional and holding facilities within the State.

40. Defendants' deficiencies, incompetence, inadequate medical care, negligence, and failures to act or to appropriately act violated Hine's Constitutional rights and caused Hine's injuries.

41. This action is brought seeking monetary relief, including compensatory, punitive and pecuniary damages, costs, including legal fees, and declaratory and injunctive relief.

## JURISDICTION AND VENUE

42.    The within action is authorized by and brought pursuant to the laws of the United States, including 42 U.S.C. §§1983 and 1988, the United States Constitution, including the Fourteenth Amendment of the said Constitution, and the laws and Constitution of the State of New York.

43.    The Court has subject matter jurisdiction under 28 U.S.C. §§1331 and 1343(a)(3) and has jurisdiction to issue declaratory relief as authorized by 28 U.S.C. §§2283 and 2284 and Rule 65 of the Federal Rules of Civil Procedure.

44.    Plaintiffs further invoke the supplemental jurisdiction of this Court to adjudicate pendant state law claims pursuant to 28 U.S.C. §1367.

45.    Venue is proper in the Eastern District of New York under 28 U.S.C. §1397(b)(2) because it is where the events giving rise to this action occurred.

## PARTIES

46.    Plaintiff, William Hine, lives in Nassau County, New York, in the jurisdictional area of the Eastern District of New York.

47.    Plaintiff, Linda Weisgerber, lives in Nassau County, New York in the jurisdictional area of the Eastern District of New York and at all times relevant hereto was and remains the lawful spouse of Plaintiff William Hine.

48. Defendant Nassau County, a municipal corporation, is a political subdivision of the State of New York. The County has ultimate responsibility for the Correctional Center, which is operated by the Sheriff's Department.

49. The Correctional Center is located in East Meadow, New York, in the jurisdictional area of the Eastern District of New York. The Correctional Center is operated by the Sheriff's Department under the direct control and supervision of Defendant Sposato pursuant to Article XX of the Nassau County Charter.

50. The Sheriff's Department is a department of the Defendant County. It is headed by Sheriff Sposato, who is its chief supervisor and administrator. The Sheriff, among other duties, oversees the operations of the Sheriff's Department, which includes the daily operation of the Correctional Center including but not limited to the approval, oversight and enforcement of the contract with Armor and the medical care at the Correctional Center. The Sheriff is responsible for supervising deputy sheriffs, corrections officers and other staff, and he participates in formulating and establishing the practices, customs, procedures, and policies of his department and the Correctional Center, as well as overseeing those practices, customs and policies.

51. Defendant Michael J. Sposato ("Sposato") is and has been, at all relevant times, the Sheriff of the Sheriff's Department.

52.    Defendant, Armor is a foreign corporation that has contracted with the County to provide health and medical services to the inmates of the Correctional Center. It took over this function from the Nassau Health Corporation and Nassau University Medical Center ("NUMC"), although use is to be made of the facilities and staff of the NUMC as needed.

53.    Upon information and belief, Armor was incorporated in the State of Florida in 2004. Armor's principle place of business is located at 4960 SW 72nd Avenue, Suite 400, Miami, Florida 33155.

54.    Armor is responsible, at least in part, for creating, implementing and enforcing policies, practices, customs, guidelines and protocols applicable to its duty and obligation to provide health and medical services to inmates of the Correctional Center on behalf of Nassau County.

55.    Armor was, at all times relevant hereto, endowed by the County with powers and functions that are governmental in nature so that Armor became an agency or instrumentality of the County, and, therefore, subject to the Constitutional obligations, constraints and limitations applicable to the County.

56.    Defendant Armor Correctional Health Services of New York, Inc. (hereinafter, "Armor New York"), is a foreign corporation and, upon information and belief, is a subsidiary, affiliate, alter ego or spin-off of Armor, and appears to have been formed

specifically in conjunction with or relating to Armor's contract with the County. It was incorporated in Florida in 2014, and its principal place of business is located at 4960 SW 72nd Avenue, Suite 400, Miami, Florida 33155, the same address as the principal place of business for Armor. (Armor and Armor New York may be collectively and alternatively referred to as "Armor" or the "Armor Defendants").

57.    Defendants "John Does 1-10" are Corrections Officers, who were or still are employees, servants and agents of the County, performing duties and services, including as supervisors, at the Correctional Center at all times relevant hereto and referred to in the within action.  Their names are unknown or not positively known by the plaintiffs but are known to the defendants.  With respect to the acts and omissions set forth in this Complaint, the Correction Officer defendants, including supervisory defendants, each acted under color of state law in the course of his duties and functions as an employee, servant, and/or agent of the County.  To the extent it is determined that any Corrections Officer acted for his own best interests, then those acts or omissions will be deemed to have taken place in that person's individual capacity.

58.    Defendants "John and Jane Does 11-20" are employees, servants, agents or independent contract workers for Armor and/or Armor New York, who were or still are employees,

servants, agents or independent contractors of the aforesaid corporate entities, performing duties and services, including as supervisors, at the Correctional Center at the relevant times referred to in the within action. These Defendants include physicians, nurses, physician's assistants and nurse practitioners. Their names are unknown or not positively known to the plaintiffs but are known to the defendants. With respect to the acts and omissions set forth in this Complaint, the aforesaid defendants, including supervisory defendants, each acted under color of state law in the course of his or her duties and functions as an employee, servant, independent contractor and/or agent of Armor and/or Armor New York and as agent for the County.

59.    Private physicians, nurses, physician's assistants and nurse practitioners who provide medical services to prisoners or Correctional Facility detainees pursuant to a contract (or sub-contract) with the Municipal Defendants act under color of state law. The judgment of physicians, nurses, physician assistants and nurse practitioners are exercised on behalf of the Armor Defendants and on behalf of the municipal Defendants and in furtherance of their obligation to provide medical care to the aforesaid correctional facility inmates. The said physicians, nurses, physician's assistants and nurse practitioners perform a governmental function and carry out the Municipal Defendants'

Constitutional obligation of providing health and medical care to the said inmates.

## NOTICE OF CLAIM

60.    Linda Weisgerber was at all times relevant hereto and remains an authorized agent, representative, and Attorney-In-Fact for Hine and served a Notice of Claim on the County on July 13, 2015.

61.    A hearing was held pursuant to New York General Municipal Law §50(h) on January 5, 2016.

62.    More than thirty (30) day have elapsed since the aforesaid Notice of Claim was served on the County, and the County has failed or refused to pay or adjust the claims.

## FACTS

63.    The County, the Sheriff's Department and the Correctional Center share a long and disturbing history of neglect of their duties, obligations and responsibilities vis-a-vis the health and medical needs and the general well-being of those who become inmates of the Correctional Center.

64.    The County, the Sheriff's Department and the Correctional Center knew of, but purposely ignored, the pattern of deficient, unprofessional, incompetent, reckless, negligent, callous and inhumane treatment of Correctional Center inmates with regard to health and medical services.

65.    Defendants intentionally and negligently created an environment of neglect and callous indifference.

66.    Defendants encouraged cost reduction to the level of depriving inmates of adequate and medically necessary medical care and treatment.

67.    The conditions leading to the injuries of Hine are the culmination of a long history of the County, the Sheriff's Department and the Correctional Center failing to protect human rights, human dignity and human life.

68.    In 2009, the New York State Commission of Corrections ("NYCOC") issued a report indicating that the Correctional Center was not in compliance with the minimum standards for a correctional facility. Addressing certain health and medical care needs to inmates was part of the twenty-five (25) steps that the Commission recommended that the Correctional Center would need to take to come into compliance with minimum standards.

69.    In 1990, the County attempted to address some of the human rights and human life problems at the Correctional Center by amending the County Charter and establishing a Nassau County Correctional Center Board of Visitors (§2004). This Board of Visitors was to have wide-ranging powers to oversee operations at the Correctional Center, including authority to investigate inmate grievances, inspect the facility, examine records, create

reports and advise the Sheriff's Department about changes that could improve the facility and prevent unnecessary deaths.

70.    The County Charter's provision mandating a Board of Visitors is a non-discretionary duty of the County. County administration after administration failed to appoint the seven required Board members. In 2012, the New York Civil Liberties Union brought an action on behalf of Correctional Center inmates who suffered health and medical mistreatment and maltreatment while incarcerated to compel appointment of the seven Board of Visitors members. The complaints ranged from being administered incorrect doses of medication, to untreated broken bones and to never being examined by a physician despite weeks of pain and hearing loss. A State Supreme Court justice ordered the appointments of Board members in March of 2013. After much delay, upon information and belief, board members *recently* were nominated and, eventually, their appointments were confirmed by the Nassau County Legislature.

71.    Upon information and belief, the aforesaid Board of Visitors has not convened to address the health and medical needs of inmates at the Correctional Center.

72.    Since 2010, at least, nine (9) inmates whose deaths could have been prevented have perished while incarcerated at the Correctional Center.

73.     Armor has been found to have a history of providing grossly inadequate and deficient medical care, some of which has resulted in preventable deaths of inmates at the Correctional Center.

74.     On January 28, 2015, William Hine was sentenced to eight (8) months in custody at the Correctional Center.

75.     While in court for sentencing, counsel for William Hine, Marc C. Gann, Esq., addressed with the sentencing Judge, Honorable William C. Donnino, Hine's medical condition and medication needs relating to Hine's chronic conditions.

76.     Attorney Gann provided the Court with a list of Hine's required medications and nutritional supplements, along with empty prescription bottles for each required medication and supplement.

77.     Upon information and belief, Honorable William C. Donnino, or his part Clerk, made notes on Hine's file, or included notes and records in his file, regarding Hine's medical needs and otherwise provided the list of medications and empty prescription medication bottles to Corrections Officers who subsequently transported Hine to the Correctional Center.

78.     Hine's court file, including the list of necessary medications and supplements, and empty pill bottles, accompanied Hine to the Correctional Center.   Said items where then

transferred to the Corrections Officers tasked with Hine's intake into the Correctional Center.

79.     Upon his arrival at the Correctional Center on January 28, 2015, Hine was taken to the intake section for observation and evaluation for a period of not less than seventy-two hours. During that observation and evaluation period, Hine addressed his chronic medical conditions and his needs for medication and supplements with Armor staff and with Corrections officers.

80.     Upon information and belief, Hine's list of medications, medical records and empty prescription medication bottles were logged into the personal property records at the Correctional Center and thereafter provided to Armor.

81.     Those empty prescription bottles were returned to Hine upon his release from the Correctional Center on July 3, 2015.

82.     Upon being informed of the numerous medications and supplements necessitated by Hine's chronic conditions, an Armor Nurse, whose name is known to Armor but not yet known by the plaintiffs, laughed at Hine and told Hine that he would not be provided with those medications and that he would be lucky to even get Tylenol.

83.     Several days after the intake screening was complete, Armor began providing Hine with only Tylenol.

84.     Hine immediately began complaining to Corrections Officers and Armor personnel that his needs for medication and

supplements were being ignored and that he was in significant pain and discomfort. Unfortunately, those pleas were wholly ignored.

85.   Although Plaintiff was permitted to see an Armor psychologist, that psychologist refused to prescribe Hine with any of his necessary medication.

86.   By letter dated February 3, 2015, attorney Marc C. Gann identified himself to Sheriff Michael Sposato as the attorney for Mr. Hine, who had been sentenced to the custody of the Correctional Center on January 28, 2015. Mr. Gann stated that Mr. Hine has a number of medical issues which require daily medication. This letter stated that Mr. Hine was accompanied by a list of his required medications, letters from his doctors, copies of prescriptions and empty prescription bottles when he was incarcerated at the Correctional Center on January 28, 2015. Mr. Gann stated that despite being provided with the above-information, Mr. Hine was being deprived of his necessary medication and medical treatment. Mr. Gann notified Sheriff Sposato that the deprivation of this necessary psychiatric, pain and seizure medications put Mr. Hine at significant risk of injury.

87.   Upon information and belief, despite receiving Mr. Gann's letter, Sheriff Sposato ignored that letter, did not

investigate the claims contained therein, and took no action in response thereto.

88. By letter dated February 4, 2015, Michael Tarbutton, Principal Law Clerk to the Honorable Justice Donnino communicated to Vicky M. Hailey, Nurse Administrator of Armor at the Correctional Center. In that letter, Mr. Tarbutton stated that he was forwarding the February 3, 2015 letter from Hine's attorney, Marc C. Gann, Esq., along with supporting medical documentation relating to the prescription medication needs of William Hine. Mr. Tarbutton asked Ms. Hailey to inquire into Hine's complaints regarding Armor's failure to provide Hine with his necessary medications and to take whatever actions Ms. Hailey deems appropriate to rectify the situation.

89. Upon information and belief, Ms. Hailey ignored that letter, did not investigate the claims contained therein, and took no action in response thereto.

90. On or about February 5, 2015, plaintiff William Hine met with Dr. Marcos. Upon information and belief, Dr. Marcos was and is a Medical Director of Armor.

91. During that February 5, 2015 meeting with William Hine, Dr. Marcos stated that she had received and reviewed Hine's medical records and list of medications and determined that William Hine would not receive the medications that he was prescribed prior to his incarceration.

92.    Although Plaintiff was permitted to see Dr. Marcos of Armor, that medical doctor failed and refused to prescribe Hine with his necessary medication.

93.    Plaintiff William Hine subsequently filed numerous sick call requests indicating that he was not receiving his prescribed medications that were needed to treat his various medical conditions.

94.    Acting pursuant to the custom, policy and practice of Armor and the County, Armor medical staff members either failed to properly diagnose William Hine's medical condition and failed to provide Hine with his necessary medications, or ignored Hine's medical conditions and refused to provide Hine with necessary medications.

95.    Instead, the subject Armor medical staff members ignored Hine's medical history and complaints, missed William Hine's signs of his conditions, and ignored those signs despite being apparent to a properly and adequately trained medical professional.

96.    As a result of not receiving his necessary medication, and medical treatment, Hine suffered an acute incident on March 27, 2015 when he was vomiting and suffering from diarrhea. Later that day, in the early evening, Hine went to take a shower. While in the shower, Hine passed out, striking his head on the floor, causing him to sustain serious injuries and to show

obvious signs of the medical negligence to which Hine was being exposed.

97.     After he passed out, Hine was placed in the infirmary at the Correctional Center.

98.     While in the infirmary, Hine complained of cuts and abrasions to his forehead and right arm, severe pain inside his left ear, headache, and light sensitivity.

99.     While in the infirmary, Armor staff administered an intravenous to Hine, cleaned his abrasions and checked his eyes.

100.    While in the infirmary, Hine overheard Dr. Sanchez of Armor saying that she could not transfer Hine to the hospital without first receiving approval from someone at Armor in Miami.

101.    Later that same evening, Hine was transported from the infirmary to a cell in what Hine believes to be the clinic at the Correctional Center.  He was placed alone in that cell without any supervision by Corrections Officers or anyone from Armor.

102.    Throughout the night in that cell, Hine repeatedly vomited in the urinal.

103.    The next morning, a correction officer brought Hine breakfast.

104.    Hine attempted to eat that breakfast but immediately began throwing up.

105. As a result of this continued vomiting, Dr. Marcos of Armor came to see Hine in this cell. Dr. Marcos briefly examined Hine then immediately sent him to Nassau University Medical Center ("NUMC").

106. Hine was eventually transported to Nassau University Medical Center where he was diagnosed with a concussion, dehydration and syncope and was prescribed several medications.

107. After receiving treatment at NUMC, Hine was returned to the Correctional Center where he was placed in a cell in what Hine identifies as the clinic.

108. Hine remained in the clinic cell for an additional three days.

109. Throughout those three days, Hine was seen by only one Armor medical staff member. That person was an Armor nurse who saw Hine only one time. That nurse told Hine that he was not going to be given any of the medications that were prescribed by NUMC and that he must first been seen by an Armor doctor in order to determine what care he would be given, if any.

110. Upon information and belief, Hine was not seen by an Armor doctor during the time he remained in the clinic cell and he did not receive any medication until after the three days, once he was returned to a cell in B1A.

111. Even after receiving medical treatment at NUMC for his condition, Hine continued to be neglected by the defendants who

continued to ignore his needs for necessary medical treatment, medications and care.

112.    Despite Hine's acute incident, the defendants continued to ignore Hine's medical needs and failed and refused to provide Hine with the medications and treatment that he needed up to and including the time of his release from the Correctional Center on July 3, 2015.

113.    William Hine sustained significant and permanent injuries while in the custody of the Correctional Center and Sheriff's Department.

114.    William Hine's injuries may have been prevented had he received appropriate adequate and necessary care while at the Correctional Center.

115.    Armor was grossly incompetent and acted in violation of NYS Education Law, Article 139 (Nursing) in that treatment of Hine constituted unprofessional conduct and that the nurses involved acted outside their scope of practice.

116.    By failing to provide appropriate and necessary medical treatment to Hine, including but not limited to not administering the necessary and prescribed medications, Armor abandoned Hine.  Additionally, Hine should have been transferred immediately to NUMC and treated by a physician following his acute medical event. Upon his return from the hospital, Hine should have been provided with the medications prescribed to him

by NUMC. Failure to do this constituted grossly inadequate and negligent medical care and a deprivation of Hine's Constitutional rights.

117. The medical care provided by Armor to Hine was grossly negligent and grossly incompetent for failing to recognize that Hine was seriously ill, displaying obvious signs of an acute condition yet keeping him in the Nassau County Correctional Center and in his cell without notifying a physician or arranging transfer for emergency hospital level care.

118. Nassau County should have conducted an inquiry into the fitness of Armor, Armor's flagrant disregard of the New York State Education Law, the Rules of the Board of Regents, Armor's nursing practices and Armor's unlawful medical practice. However, Nassau County has thus far failed to do so.

119. By denying Hine his prescribed medications and supplements and failing to provide Hine with appropriate medical care, Armor abandoned this patient, William Hine, who should have been receiving said prescribed medications in order to adequately treat his various medical conditions. Failure to do so constituted grossly inadequate and negligent medical care.

120. Upon information and belief, Armor was required to conduct a periodic review of its medical staff procedures and to have clinicians available during evenings and weekends.

121.   Upon information and belief, it had been previously recommended that the Nassau County Sheriff's Department and Armor review its procedures for dealing with medical emergencies and improve upon them.

122.   Upon information and belief, neither the Sheriff's Department nor Armor ever conducted any such review.

123.   The NYSCOC previously found that Armor's care was deficient and resulted in mismanaged and inadequate health care.

124.   Armor failed to render proper and adequate medical care by, among other things, not providing Hine with his prescribed medications and supplements despite knowing of Hine's need for the same and Hine's communicating his need for said medications and supplements and otherwise being put on notice of the medical necessity of the prescribed medications and supplements and of his chronic and acute medical condition.

125.   Had Hine received proper medical care and supervision, his Constitutional rights would not have been violated and his injuries may have been prevented.

126.   Armor has a pattern of failing to provide hospitalization for inmates who needed it, failing to properly manage patient's chronic medical needs and failing to keep proper and organized patient records.

127.   Nassau County and Nassau County Sheriff's Department knew, or, upon exercise of due diligence, would have known that

Armor's track record for providing health and medical services beyond Nassau County was and is not a good one.

128. There were multiple lawsuits pending against Armor in a number of states, including in Florida, Virginia and Oklahoma, at the time of the contract signing between Armor and Nassau County and at the time that contract was renewed.

129. Despite this track record, the County entered into a contract, negotiated by various County officials (including input from Sheriff Sposato and Executive Edward Mangano), with Armor on May 14, 2011, and Armor took over and began performing the aforesaid services at the Correctional Center as of June 1, 2011.

130. Public relations press releases by County officials touted a projected $7,000,000.00 annual savings by the County using Armor rather than continuing to hire its own medical staff and using the medical services provided by NUMC.

131. The County, with input from Sheriff Sposato and Executive Edward Mangano, recently renewed its contract with Armor. In fact, the contract has been renewed twice, in June of 2013 and June of 2015. This was in the wake of inmate Gleeson's July, 2014 death in custody at the Nassau County Correctional Center, and, more recently, the death of inmate Antonio Marinaccio in May of 2015.

132. Nassau County had the Constitutional duty to provide adequate medical care to inmates and to address the inmates' complaints of serious medical conditions towards which the defendants showed deliberate indifference.

133. Upon information and belief, since Armor took over providing health and medical services at the Correctional Center, the number of complaints relating to medical health care has escalated. Inmates have complained that doctors are no longer available seven days a week, that if someone falls ill or is injured on a weekend, no treatment occurs and that Armor personnel create insurmountable barriers to inmates' access to qualified doctors by denying sick call requests and by using non-qualified medical personnel to screen people. Yet, inmates' medical complaints have little chance of being properly addressed under the present policies and practices of the Defendants.

134. The long history of the Defendants' misfeasance, malfeasance and nonfeasance with regard to health and medical services at the Correctional Center established that such has become and is the policy, practice and/or custom of the municipal Defendants and that such policy, practice and/or custom violated Hine's Constitutional rights.

135. The history of Armor's misfeasance, malfeasance and nonfeasance with regard to health and medical services at the

Correctional Center and elsewhere establishes that such has become and is the policy, practice and/or custom or Armor and that such policy, practice and/or custom violated Hine's Constitutional rights.

136. The United States Constitution requires governmental agencies and prison officials to provide all prisoners with adequate medical care. These individuals, by virtue of their deprivation of liberty, cannot provide such care for themselves.

137. Hine had certain chronic medical conditions which were disclosed to Judge Donnino at Plaintiff's sentencing. When Hine was remanded, a list of his medications, letters from his doctors, copies of prescriptions and empty prescription bottles were delivered to the jail with him so that the medical staff was fully informed of Hine's medical conditions and need for specific medications. Those letters from Hine's doctors addressed his medical conditions and the necessity for his prescribed medications. These conditions were made known to officials at the Correctional Center and to Armor at the outset of Hine's incarceration.

138. Upon information and belief, the Correctional Center and Defendant Correction Officers provided Hine's medical records to Defendant Armor; however, Defendant Armor failed to review Hine's complete medical records or otherwise ignored those medical records.

139.    Beginning on or about February 2, 2015, Hine filed one of many sick call requests after being denied his prescribed medications and vitamin supplements.

140.    On or about March 20, 2015, Hine filed a sick call request complaining of recurring issues of syncope without the fainting.

141.    Upon information and belief, Hine complained of recurring issues of syncope. He further indicated that the issue of syncope occurred when sitting up or standing in the shower and that the condition affected his balance.

142.    Despite Hine showing outward signs of an acute medical condition and making complaints consistent with such a condition, Hine received no appropriate medical treatment.

143.    Upon information and belief, the Armor nurse who saw Hine regarding Hine's complaints simply did a cursory review of Hine but failed to do a proper or adequate examination and failed to have Hine examined or seen by any medical person with the appropriate training and skill to properly assess Hine's condition and failed to provide Hine with his prescribed medications and nutritional vitamin supplements.

144.    Upon information and belief, on March 27, 2015, Hine passed out in the shower.

145.    Upon information and belief, Corrections Officers did not notice that Hine had passed out while showering for a

prolonged and unreasonable period of time leaving Hine lying on the wet shower floor of broken tiles.

146. Hine sustained injuries that were caused and or contributed to as a result of the acts and omissions of Armor and corrections officers.

147. Upon information and belief, Defendant Armor refused to permit Hine to be transported to the hospital following his fall until permission was granted by a Miami Florida based decision maker at Defendant Armor.

148. Upon information and belief, Hine was not transported to NUMC until approximately twenty-four hours after his fall.

149. Prior to his fainting and falling, William Hine provided Correctional Center staff and Armor medical staff with ample opportunity to provide proper care.

150. Armor failed and refused to provide Hine with his prescribed medications and vitamin supplements despite being requested to do so by William Hine.

151. Following Hine's hospitalization, Hine was returned to the Correctional Center where he remained an inmate until his release on July 3, 2015.

152. Throughout the remainder of Hine's incarceration, Armor and the other defendants continued to deprive Hine of his prescription medications and nutritional supplements.

153.   On or about July 13, 2015, a Notice of Claim, dated June 25, 2015, was served on behalf of William Hine against the Municipal Defendants herein and Armor, by their employees and agents, alleging that Hine was the victim of recklessness, carelessness, negligence, gross negligence, and unlawful conduct.

154.   Hine had a history of health issues and conditions that were ignored, went unrecognized, and were improperly treated by the Armor medical providers.

155.   Armor's delivery of healthcare to William Hine was incompetent and deficient due to a lack of adequate protocol, lack of coordination, lack of effective communication and deficient medical knowledge by physicians and midlevel clinicians.

156.   Defendants ignored the content of the medical records that Hine brought with him to the Correctional Center on January 28, 2015.

157.   Had William Hine been provided with competent medical care by Armor in a timely manner, with the medication and vitamin supplements that had been prescribed for him by his treating physicians, his maltreatment and injuries may have been prevented.

158.   Medical providers of Armor lacked the clinical knowledge to recognize that Hine was symptomatic of a serious health and

medical condition and continued him on an ineffective course of treatment.

159. The medical providers of Armor failed to recognize multiple warning signs and symptoms of William Hine's condition.

160. Armor failed to even consider an immediate transfer to a hospital for Hine despite repeated complaints and delayed such a transfer even after Hine suffered a medical emergency.

161. Nassau County failed to conduct an inquiry into the fitness of Armor as a correctional medical care provider in the Nassau County Correctional Center.

162. The County failed to investigate Armor's pattern of failing to properly manage patients' chronic medical needs, failing to maintain proper and organized patient records, and failing to provide hospitalization for patients when clinically indicated.

163. Upon information and belief, throughout the entire time of Hine's incarceration, Armor did not provide proper medical treatment or care or hospitalization for Hine because doing so would increase their cost of providing health and medical services and would not comport with the budget considerations of Armor or Nassau County.

164. Upon information and belief, Armor's medical staff had to obtain direct and specific permission and authorization from Armor's corporate headquarters in Miami before those personnel

could have an inmate transported to NUMC or to have testing performed.

165. Hine suffered from numerous serious medical conditions that required medication.

166. Defendants' failure to provide Hine with necessary medications was so egregious as to rise to a violation of his Constitutional rights and resulted in his injuries.

167. The refusal to provide Hine with necessary medication and treatment was done with deliberate indifference of the defendants as to the health and well-being of Hine.

168. By ignoring Hine's medical needs, each of the defendants herein acted with deliberate indifference with regard to Hine and with regard to his serious medical needs and condition.

169. The NYSCOC, via a number of reports issued by it relating to inmate deaths at the Correctional Center prior to Hine's incarceration and mistreatment, warned the Municipal Defendants and Armor that they should and must address the deficiencies, failures and other problems relating to health care and medical services at the Correctional Center.

170. The Municipal Defendants and Armor ignored the warnings and recommendations of the NYSCOC.

171. Based on the well-known long and repetitious history of systematic medical and health care deficiencies and failures at the Correctional Center, as well as an abundance of adverse

media coverage and publicity in that regard, as to Armor's track record of lawsuits in multiple jurisdictions, as to Armor's pattern of medical and health service deficiencies, a number of adverse NYSCOC reports, especially over the last five years or so, the successful lawsuits brought against the Municipal Defendants and Armor and the many hundreds of prisoner complaints, the Municipal Defendants had actual knowledge of the deficiencies in health and medical care at the Correctional Center by Armor.

172. The Municipal Defendants, the Correction Officer Defendants, and Armor, knew of the deficiencies in the medical treatment of Hine and that the state of medical and health services at the Correctional Center could and would lead to the serious consequences suffered by Hine.

173. The defendants further exhibited deliberate indifference by ignoring past sanctions imposed by courts and the Department of Justice, by allowing the systematic deficiencies of health and medical care at the Correctional Center to exist and remain for decades, by ignoring reports of the NYSCOC issued prior to their neglect of Hine's medical needs, by ignoring Hine's obvious health conditions, by failing to provide prescribed medications and nutritional supplements for diagnosed or known conditions, by delaying treatment of Hine, by delaying hospitalization of Hine, by continuing to deprive Hine of his

necessary medications and nutritional supplements even after his hospitalization through the day of his discharge, by making medical decisions based on non-medical factors such as financial considerations, expediency, lack of staff, etc., in interfering with access to medical treatment by giving priority to financial considerations rather than the welfare of an inmate, by denying Hine access to a medical specialist, by making deficient and incompetent medical judgments as to Hine, and, as to the Municipal Defendants by hiring Armor without doing proper due diligence and, further, by renewing Armor's contract under and in light of all of the existing circumstances.

174.    The acts and omissions of the Municipal Defendants and their repeated conduct, was so persistent and widespread as to constitute policies, customs and practices that proximately violated Hine's Constitutional rights and caused Constitutional injury to Hine.

175.    The United States Constitution and the Constitution of the State of New York provide protections for detainees, such as Hine, not to be subjected to cruel or unusual punishment.

176.    Armor and its private doctors and medical personnel, as a consequence of Armor's contract with the County to provide health and medical services to the inmates of the Correctional Center, and, therefore, performing governmental functions, is

subject to §1983 claims relating to the adequacy of the medical and health services provided.

177.    The Defendant Sposato and the various Correction Officer Defendants, through their own individual actions, violated Hine's constitutional rights.

178.    Each and every action taken and not taken relating to Hine's care and treatment were at the direction and under the supervision of Sheriff Sposato, pursuant to policy, practice and procedure of Armor, the County, as established and ratified by Armor, Sposato and County, and with the full knowledge of all Defendants.

179.    Upon information and belief, the acts directed at William Hine by the subject Corrections Officers were consistent with the course of conduct exhibited by Corrections Officers at the Correctional Center on multiple occasions prior to the incidents involving William Hine.

180.    Due to the history and frequency of the acts of Corrections Officers, such as those directed at and inflicted to William Hine, Sposato and the County were aware or should have been aware of the conduct of the Correction Officers.

181.    Sposato, as a supervisory official, participated directly in the subject Constitutional violations. As Sheriff and chief administrator and supervisor of the Correctional Center, Sposato promulgated, created or participated in the

creation of the policies, practices and customs under which the unconstitutional conduct occurred and/or he allowed the continuance of such policy, practices and customs under which the unconstitutional conduct occurred and/or he allowed the continuance of such policy, practice and custom.

182. Defendant Sposato knew or should have known that continuing the above-said policies, practices and customs were unconstitutional and posed an excessive risk to the health and safety to inmates like Hine.

183. The policies, practices and customs of the Correctional Center, as directed towards William Hine constituted a violation of William Hine's Constitutional rights.

184. Defendant Sposato, through his continued encouragement, approval and ratification of the aforesaid policies, practices and customs, despite their known and obvious inadequacies and dangers and risks to inmates, along with his input on the County's decision to enter into and renew the subject contract with Armor, was deliberately indifferent to inmates' including Hine's, serious medical needs.

185. The Municipal Defendants, including Sposato, failed and refused to adequately train and supervise the staff of the Correctional Center, constituting a deliberate indifference to the rights of those who would come into contact with said staff, including Hine.

186.    Armor failed to adequately train and supervise its medical staff, which staff performed health and medical care services at the Correctional Center, constituting a deliberate indifference to the rights of those inmates who came into contact with said staff, including Hine.

187.    The Municipal Defendants endorsed, accepted and adopted the policies, practices and protocols of Armor and the Correction Officers, and the conduct, acts and failures to act in pursuance of these policies caused the violation of Hine's Constitutional rights by hiring Armor, retaining Armor, not properly or adequately supervising Armor and for not terminating the contract with Armor despite having justification to do so.

188.    In twice renewing Armor's contract, the Municipal Defendants by and through its decision makers, including but not limited to Supervisor Ed Mangano, with input from Sheriff Sposato and other Municipal employees, repeatedly ratified the policies, practices and protocols of Armor, when, in fact, they should have taken affirmative action to terminate the existing contract or to refuse renewal.

189.    The Municipal Defendants created the risk of violating Hine's Constitutional rights by creating conditions, policies, customs and practices as those set out herein-above.

190. Armor created the risk of violating Hine's Constitutional rights by creating conditions, policies, customs and practices as those set our hereinabove.

## LEGAL CLAIMS FOR RELIEF

### FIRST CLAIM

191. Plaintiffs repeat, reallege and incorporate by reference paragraphs "1" through "190" above, as if more fully set forth herein.

192. The Defendant County, acting on its own by and through Supervisor Mangano and other County decision makers, and through the Sheriff's Department, the Correctional Center, Sheriff Sposato and the Armor Defendants, directly caused the Constitutional violations suffered by Hine as a result of the pattern of conduct alleged herein of Sheriff Sposato, Corrections Officers John Does 1 through 10, the Armor Defendants and the Armor Defendants' employees and agents, John and Jane Does 11 through 20, and is liable for damages suffered by the plaintiffs herein.

193. At all times relevant herein, Defendant County, by and through Supervisor Ed Mangano and other County decision makers, acting on its own and through the Sheriff's Department, Correctional Center, Sheriff Sposato and the Armor Defendants has in effect certain policies, practices and customs that

created, caused, condoned, contributed to, allowed and fostered the unconstitutional conduct of the other municipal Defendants, Armor, the individual Correction Officers, and the employees and agents of the Defendants.

194.    At all times relevant herein, Defendant County, by and through Supervisor Ed Mangano and other County decision makers, acting on its own and through the Sheriff's Department, Correctional Center, the Armor Defendants and the aforesaid individual Defendants, had in effect certain policies, practices and customs which overlooked and ignored, encouraged and explicitly and/or tacitly sanctioned, through the conduct alleged herein, the violation of the Constitutional rights of Hine and other inmates to adequate health and medical care at the Correctional Center.

195.    The aforesaid policies, practices and customs were the direct and proximate cause of the unconstitutional conduct alleged herein as to Hine.

196.    The Defendant County knew of the deficiencies of health and medical services of the Sheriff's Department, the Correctional Center, the Armor defendants and the aforesaid individual defendants prior to the date of the mistreatment and neglect of Hine.

197.    Despite its knowledge and awareness, Defendant County allowed this wrongful and unconstitutional conduct and failed to take appropriate remedial action.

198.    The Defendant County knew of Armor's propensity for performing deficient health and medical services on behalf of inmates.

199.    By renewing Armor's contract, Defendant County, by and through Supervisor Ed Mangano and other County decision makers, ratified and condoned Armor's policy, practice and/or custom of Armor's deficient health and medical care services.

200.    Despite its knowledge of the aforesaid propensity of Armor, Defendant County, through it Supervisor and other decision makers, failed to take appropriate remedial action.

201.    The Defendant County's conduct demonstrated reckless and/or callous indifference to the federally protected right of Hine.

202.    All of the foregoing led to the violation of the Constitutional rights of Hine and his preventable injuries.

## SECOND CLAIM

203.    Plaintiffs repeat, reallege and incorporate by reference paragraphs "1" through "202" above, as if more fully set forth herein.

204.    The Defendant County, acting on its own by and through its Supervisor and other County decision makers, and through the

other defendants, failed and refused to train or to adequately train the Defendant Corrections Officers John Does 1 through 10, other Sheriff's Department staff and medical staff at the Correctional Center.

205.   The Defendant County, acting on its own and through the other Defendants failed to train, to adequately train, or to ensure or require the proper and adequate training of the Armor Defendants, and their employees and agents, John and Jane Does 11 through 20.

206.   The need for training, additional training or different training to avoid violation of Constitutional rights was such as to be obvious that the inadequacy of training would result in a violation of the Constitutional rights of Hine and other inmates relating to their serious medical needs and other aspects of health and medical care.

207.   The inadequacy of training as aforesaid at the Correctional Center was so pervasive and long standing as to form a pattern constituting deliberate indifference to the serious medical needs of Hine and other inmates and established the deficient and inappropriate training as policy, practice and/or custom.

208.   The pattern of similar Constitutional violations by untrained or inadequately trained Correctional Center staff (including medical staff of Armor) demonstrates the deliberate

indifference of the County toward its failure to adequately train Correctional Center staff and to oversee the providing of medical services to inmates by Armor.

209. As a result of all that is set out above, the County had sufficient notice of the failure to adequately train Armor's medical staff.

210. Despite having sufficient notice, the County failed to take appropriate remedial action despite being directed to do so by the Court and the State of New York.

211. It is and was reasonable for plaintiff, Hine, and other Correctional Center inmates to expect adequate training to have occurred.

212. The Defendant County's conduct demonstrated reckless and/or callous indifference to the federally protected rights of Hine.

213. All of the foregoing led to the violation of the Constitutional rights of Hine and his permanent injuries.

## THIRD CLAIM

214. Plaintiffs repeat, reallege and incorporate by reference paragraphs "1" though "213", above, as if more fully set forth herein.

215. The Defendant County, acting on its own through Supervisor Ed Mangano, Sheriff Sposato and others, and through the other Municipal Defendants failed to supervise or to

adequately supervise the Defendant Sposato, the Defendant Corrections Officers John Does 1 through 10, other Sheriff's Department staff and Armor medical staff at the Correctional Center, including John and Jane Does 11 through 20.

216. Defendant County employee supervisors, in the County government's executive branch, including but not limited to Executive Edward Mangano and Sheriff Sposato participated directly in the unconstitutional actions of the defendants by promulgating, creating, condoning, implementing, directing, adopting as their own and carrying out or continuing certain policies, practices and customs that violated the Constitutional rights of Hine and other inmates, as alleged hereinabove.

217. Defendant Sposato, as a supervisor and administrator, participated directly in the unconstitutional actions of the defendants by promulgating, creating, condoning, implementing, directing, adopting as his own and carrying out certain or continuing policies, practices and customs that violated the Constitutional rights of Hine and other inmates, as alleged hereinabove.

218. The aforesaid Defendant supervisors had knowledge of the inadequacies of their supervision and failed to do anything to remedy the situation that existed.

219.    The aforesaid supervisors caused Hine to be subjected to the deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States.

220.    The conduct of the County and the aforesaid supervisors demonstrated reckless and/or callous indifference to the federally protected rights of Hine.

221.    The failures of Defendant County and the aforesaid supervisors' to adequately supervise, as set forth, led to the violation of the Constitutional rights of Hine and his permanent injuries.

## FOURTH CLAIM

222.    Plaintiffs repeat, reallege and incorporate by reference paragraphs "1" through "221", above, as if more fully set forth herein.

223.    The Armor Defendants failed to train or to adequately train the medical staff at the Correctional Center, including Defendants John and Jane Does 11 through 20 and, further, failed to train or adequately train Defendant Corrections Officers John Does 1 through 10.

224.    The need for training, additional training or different training to avoid violation of Constitutional rights was such as to be obvious that the inadequacy of training would result in a violation of the Constitutional rights of Hine and other inmates

relating to serious medical needs and other aspects of health and medical care.

225.    The inadequate training given by Defendant Armor to medical staff and corrections officers at the Correctional Center was so pervasive and long-standing as to form a pattern constituting deliberate indifference to the serious medical needs of Hine and other inmates and established the deficient and inappropriate training as policy, practice and/or custom of Armor.

226.    The pattern of similar Constitutional violations by untrained or inadequately trained Correctional Center medical staff and corrections officers demonstrates the deliberate indifference of Armor toward their failure to adequately train the aforesaid Correctional Center staff.

227.    As a result of all that is set out above, Defendant Armor had sufficient notice of their failure to adequately train.

228.    Despite said sufficient notice, Defendant Armor failed to take appropriate remedial actions.

229.    It is and was reasonable for William Hine, and other Correctional Center inmates, to expect adequate training to have occurred and to be cared for by adequately trained personnel.

230.    Defendant Armor's conduct demonstrated reckless and/or callous indifference to the federally protected rights of Hine.

231. All of the foregoing led to the violation of the Constitutional rights of Hine and his permanent injuries.

### FIFTH CLAIM

232. Plaintiffs repeat, reallege and incorporate by reference paragraphs "1" through "231" above, as if more fully set forth herein.

233. Defendant Armor failed to supervise or to adequately supervise the medical staff of the Correctional Center, including Defendants John and Jane Does 11 through 20 and, further, failed to train or adequately train Defendant Corrections Officers John Does 1 through 10.

234. Supervisors and administrators employed by the Defendant Armor participated directly in the unconstitutional actions of other defendants by promulgating, creating, condoning, implementing, directing, adopting as their own and carrying out or continuing certain policies, practices and customs that violated the Constitutional rights of Hine and other inmates, as alleged hereinabove.

235. The aforesaid defendant Armor supervisors and administrators were deliberately indifferent with regard to their supervision of others, including the other defendants.

236. The aforesaid defendant Armor supervisors and administrators had knowledge of the inadequacies of their

supervision and failed to do anything to remedy the situation that existed.

237.    The aforesaid Armor supervisors caused Hine to be subjected to the deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States.

238.    The conduct of Defendant Armor and its aforesaid supervisors and administrators demonstrated reckless and/or callous indifference to the federally protected rights of Hine.

239.    The failures of Defendant Armor's supervisors and administrators to adequately supervise led to the violation of the Constitutional rights of Hine and his permanent injuries.

## SIXTH CLAIM

240.    Plaintiffs repeat, reallege and incorporate by reference paragraphs "1" through "239" above, as if more fully set forth herein.

241.    The defendants had an affirmative duty to provide and administer health and medical services to Hine and other Correctional Center inmates.

242.    The defendants, as previously alleged, had a duty and obligation to Hine and other inmates of the Correctional Center to provide reasonable and adequate health and medical services. Said duty as to the Municipal Defendants was a non-delegable duty.

243.   The defendants had knowledge that the health care they provided and/or were responsible for providing to Hine and other inmates of the Correctional Center was deficient, inadequate and incompetent.

244.   The health and medical care provided by the defendants, or which they were responsible for providing, to Hine failed to meet an acceptable standard of medical treatment and care.

245. The health and medical care provided by the defendants, of which they were responsible for providing, created an excessive risk to Hine, and the harm to which Hine was exposed was sufficiently serious as to implicate his Constitutional rights.

246.   The defendants knew or should have known that Hine's medical condition constituted a serious need for competent and adequate medical care and treatment.

247.   The defendants knew, or should have known, but ignored the aforesaid excessive risk to Hine's health.

248.   The denial of adequate medical care as aforesaid created a condition of urgency, where pain, emotional distress, disability, permanent injury was likely.

249.   The defendants' policies, practices, customs, actions, and failures to act constituted deliberate indifference to the serious medical needs of Hine.

250. As a direct and proximate result of the foregoing, Hine was subjected to great physical and emotional pain and suffering.

251. The defendants' conduct demonstrated reckless and/or callous indifference to the Constitutionally protected rights of Hine.

252. As a direct and proximate result of the foregoing, Hine was subjected to cruel and unusual punishment.

253. As a direct and proximate result of all of the foregoing, as alleged hereinabove, Hine's rights under the United States Constitution were violated, which violations resulted in his permanent injuries.

## SEVENTH CLAIM

254. Plaintiffs repeat, reallege and incorporate by reference paragraphs "1" through "253" above, as if more fully set forth herein.

255. Defendant Armor was under contract with Defendant County to provide constitutionally adequate health and medical care services for the inmates of the Correctional Center.

256. Defendant Armor, including their doctors and nurses, some of whom are Defendants John and Jane Does 11 through 20, made numerous mistakes in the care of treatment of Hine.

257. Defendant Armor, including their doctors and nurses, some of whom are Defendants John and Jane Does 11 through 20,

failed to provide Constitutionally adequate health and medical care to Hine.

258. As a direct and proximate result of the foregoing, Hine was subjected to great physical and emotional pain and suffering.

259. The conduct of Defendant Armor, including the aforesaid doctors and nurses, demonstrated reckless and/or callous indifference to the federally protected rights of Hine.

260. All the foregoing led to the violation of Hine's constitutional rights and his injuries.

## EIGHTH CLAIM

261. Plaintiffs repeat, reallege and incorporate by reference paragraphs "1" through "260" above, as if more fully set forth herein.

262. The Municipal Defendants and the Armor Defendants are vicariously liable for the acts of their employees and/or agents under the doctrine of *respondeat superior.*

263. The Municipal Defendants and the Armor Defendants, through their employees and/or agents owed a duty to Hine and all other inmates incarcerated at the Correctional Center, to tender medical care and treatment with reasonable care and not to cause additional harm during the course of that care and treatment.

264.    Nassau County, by and through its Corrections Officers, designated herein as Corrections Officers John Does 1 through 10, and defendant Corrections Offices were deliberately indifferent to the serious medical needs of Hine.

265.    These serious medical needs were known by and obvious to said Corrections Officers.

266.    These Defendant Corrections Officers delayed Hine's receiving medical care and treatment for his chronic and acute medical conditions which led to his sustaining permanent injuries.

267.    These defendant Corrections Officers failed to administer appropriate medical treatment or assistance to Hine despite their knowing that such assistance and treatment were desperately needed.

268.    These defendant Corrections Officers wasted valuable time in getting Hine emergency medical care and treatment by appropriately trained medical professionals to address Hine's medical emergency despite Hine showing obvious signs of distress.

269.    Upon information and belief, these Corrections Officer Defendants ignored the repeated requests from Hine for medication, nutritional vitamin supplements and medical assistance.

270.   As a direct and proximate result of the deliberate indifference of the said Corrections Officer Defendants, Hine suffered unnecessary and prolonged mental and physical pain and suffering.

271.   The Defendant Corrections Officers' conduct demonstrated reckless and/or callous indifference to the federally protected rights of Hine.

272.   All of the foregoing led to the violation of Hine's Constitutional rights and his permanent injuries.

## NINTH CLAIM

273.   Plaintiffs repeat, reallege and incorporate by reference paragraphs "1" through "272" above, as if more fully set forth herein.

274.   The Municipal Defendants and the Armor Defendants are vicariously liable for the acts of their employees and/or agents under the doctrine of *respondeat superior*.

275.   The Municipal Defendants and the Armor Defendants, through their employees and/or agents owed a duty to Hine and all other inmates incarcerated at the Correctional Center, to tender medical care and treatment with reasonable care and not to cause additional harm during the course of that care and treatment.

276.   Defendants John and Jane Does 11 through 20 are physicians, physician's assistants, nurses and other medical

personnel who are employees and/or agents of Defendant Armor and agents of the Defendant County and whose identities are unknown to the plaintiffs at this time, but whose identities are known to the defendants herein.

277.    During his incarceration at the Correctional Center, Hine was seen, treated by or had consulted with various of the unknown doctors, physician's assistants and nurses.

278.    Defendant Armor held itself out to be providers of professional, competent and skilled health and medical care services.

279.    Upon information and belief, at all times material herein certain Defendants John and Jane Does 11 through 20 held themselves out to be competent physicians, physician's assistants, nurses and other medical personnel licensed to practice in the State of New York and/or elsewhere.

280.    John and Jane Doe physicians held themselves out to be competent to diagnose, treat, prescribe medications for an otherwise tend to inmates of the Correctional Center like Hine.

281.    During and throughout Hine's incarceration at the Correctional Center, certain of the aforesaid defendant physicians, physician's assistants, nurses and other licensed medical personnel treated Hine in a medically negligent manner or failed to treat him, including on the date of this occurrence.

282. Defendants John and Jane Does 11 through 20 individually, and/or jointly and severally, carelessly and negligently failed to treat and or misdiagnosed Hine's serious medical conditions.

283. Defendants John and Jane Does 11 through 20, individually, and/or jointly and severally, carelessly and negligently rendered medical care and treatment to Hine, which care and treatment was not in accordance with good and accepted medical practice.

284. Defendants John and Jane Does 11 through 20, individually, and/or jointly and severally, carelessly and negligently rendered improper medical care and treatment to Hine while he was incarcerated at the Correctional Center.

285. Defendants John and Jane Does 11 through 20, individually, and/or jointly and severally, carelessly and negligently failed to care for and medically treat Hine.

286. The aforesaid unknown attending defendant physicians, physicians' assistants, and nurses individually and/or jointly and severally, failed to provide adequate or timely evaluation and treatment of Hine's known conditions.

287. The Defendant John and Jane Does 11 through 20, individually, and/or jointly and severally, carelessly and negligently failed to adequately prescribe appropriate

medications and nutritional supplements to treat Hine's medical condition.

288. The Defendants John and Jane Does 11 through 20, individually, and/or jointly and severally, carelessly and negligently failed to foresee a problem with the particular course of treatment administered to Hine.

289. The Defendants John and Jane Does 11 through 20, individually, and/or jointly and severally, carelessly and negligently failed to monitor Hine throughout his time at the Correctional Center.

290. The aforesaid unknown attending defendant physicians and nurses, individually and/or jointly and severally, failed to provide adequate or timely evaluations, treatment or medication throughout Hine's incarceration, even as Hine's condition obviously deteriorated and as he specifically requested medical attention while in custody at Correctional Center.

291. The aforesaid attending defendant physicians, physicians' assistants, and nurses, individually, and/or jointly and severally, prevented Hine's timely transfer to a medical facility for appropriate medical care and treatment.

292. Following Hine's treatment at NUMC and his return to custody at the Correctional Center, the defendants continued on their same course of neglect and mistreatment of Hine as they did preceding his hospitalization.

293. By reason of the above, Hine was caused to sustain severe and irreparable injury and great physical and mental pain and suffering.

294. Defendants' medical negligence was a direct and proximate cause of Hine's permanent injuries.

## ELEVENTH CLAIM

295. Plaintiffs repeat, reallege and incorporate by reference paragraphs "1" through "294" above, as if more fully set forth herein.

296. The foregoing conduct, acts, omissions, policies, customs and practices, as set forth in detail hereinabove, intentionally undertaken with such callousness, recklessness, deliberate indifference, wanton willfulness and utter disregard for human sensitivities and rights, constitutes extreme and outrageous conduct that is so egregious as to exceed the bounds of civilized behavior and shocks the conscience.

297. The foregoing, as set forth above, was substantially certain to cause, and did cause, Hine to suffer extreme and enduring mental anguish, shock, degradation and enduring physical pain, which was and is the direct result of Defendants' intentional infliction of emotional distress.

298. As a direct and proximate cause of the acts and omissions of the defendants, as alleged herein, the defendants

caused Hine to sustain significant and permanent injuries and damages.

## TWELFTH CLAIM

299.   Plaintiffs repeat, reallege and incorporate by reference paragraphs "1" through "298" above, as if more fully set forth herein.

300.   Plaintiffs William Hine and Linda Weisgerber were lawfully married to each other throughout the time of Hine's incarceration and remain lawfully married to each other.

301.   The injuries and suffering endured by Hine have caused lasting and permanent negative and detrimental effects on Hine.

302.   The effects on Hine have interfered with Hine's ability to provide services to Weisgerber, to enjoy life, to provide emotional and physical support to plaintiff Weisgerber, and to otherwise engage in activities in which he would have otherwise been able to engage, share and enjoy with Weisgerber.

303.   Hine's inabilities and limitations have placed a great strain on plaintiffs' marriage and have caused Weisgerber to sustain a loss of support, companionship, services, love, affection, society and solice of Hine.

304.   As a direct and proximate cause of the acts and omissions of the defendants and the damages and injuries Hine was caused to sustain due to those acts and omissions, Wesgerber has been damaged in an amount within the jurisdictional limits

of this Court, in an amount that shall be determined by a trial of this matter.

### THIRTEENTH CLAIM

305.    Plaintiffs repeat, reallege and incorporate by reference paragraphs "1" through "304" above, as if more fully set forth herein.

306.    Since Hine's release from the Correctional Center, Weisgerber has expended vast amounts of time and effort caring and providing services and nursing services for Hine that were not required to be provided for Hine prior to the happening of this incident as a direct result of the impact and damages caused to Hine by the acts and omissions of the Defendants.

307.    As result of the incident complained of herein, it is anticipated that Weisgerber will be required to provide continued additional home care services and nursing services to Hine, necessitated by and as a direct result of the acts and omissions of Defendants.

308.    Plaintiff Weisgerber is entitled to be compensated for the services she provided and will continue to provide to Hine that were, are and will be necessitated by the acts and omissions of the defendants as complained of herein. Those acts and omissions proximately caused damages and injuries to Hine rendering him in need of the care that has been, and will continue to be, provided to Hine by Plaintiff Weisgerber.

309.   As result of the incident complained of herein, it is anticipated that Weisgerber will be required to provide continued additional home care services and nursing services to Hine, necessitated by and as a direct result of the acts and omissions of defendants.

310.   As a direct and proximate cause of the acts and omissions of defendants and the damages and injuries Hine was caused to sustain due to those acts and omissions, Wesgerber has been damaged in an amount within the jurisdictional limits of this Court, in an amount that shall be determined by a trial of this matter.

## JURY TRIAL DEMANDED

311.   Plaintiffs demand a trial by jury on each and every claim for relief set forth herein.

**WHEREFORE,** Plaintiffs demand the following relief jointly and severally against all of the Defendants, as follows:

a.   Awarding compensatory damages as to all claims for relief, including but not limited to pain and suffering and permanent injuries sustained by Plaintiffs, in an amount to be determined at a jury trial of this matter;

b.   Awarding punitive and/or exemplary damages for the wanton, willful, careless and reckless acts and omissions of Defendants as to all claims for relief in

an amount to be determined at a jury trial of this matter;

c.    Awarding pecuniary damages in an amount to be determined at a jury trial of this matter;

d.    Awarding costs, including reasonable attorney's fees;

e.    Awarding such other and further relief as this Court may deem just and proper.

Dated:    Westbury, New York
          September 19, 2016


                    LAW OFFICES OF HARRY C. DEMIRIS, JR., P.C.

                    By: _____
                        HARRY C. DEMIRIS, JR.
                    Attorney for Plaintiffs
                    400 Post Avenue, Suite LL1
                    Westbury, New York 11590
                    Phone: (516) 997-9354
                    Facsimile: (516) 997-9393

VERIFICATION

STATE OF NEW YORK      )
                       )      ss.:
COUNTY OF NASSAU       )

William Hine, being duly sworn, deposes and says:

That I am the plaintiff in the above-entitled action; I have read the foregoing Summons and Complaint and know the contents thereof; the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

x _____
   William Hine

Sworn to before me this
19 day of September, 2016

_____
NOTARY PUBLIC

HARRY C. DEMIRIS, JR.
Notary Public, State of New York
No. 02-DE6038722
Qualified in Nassau County
Commission Expires March 20, 2018